## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

KING EDWARD SHERMAN, JR.,

      Petitioner,

v.                               Case No.  5:17-cv-204-MCR-MJF

MARK S. INCH,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner King Sherman has filed a third amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 34). Respondent ("the State") filed an answer, providing relevant portions of the state court record. (Doc. 37 (answer and exhibits); Doc. 43 (supplemental answer)). Sherman replied to the supplemental answer. (Doc. 45). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Sherman is not entitled to habeas relief.[1]

---

[1] This case was referred to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.    Background Facts and Procedural History[2]

In November 2010, Dorothy Collie, the victim in this case, was hosting family at her home over the Thanksgiving weekend. Collie lived at 4580 Bates Road, Marianna, Florida. On November 27, 2010, the Saturday of that weekend, Ms. Collie and her family left her home at 12:00 p.m. and went to Georgia to buy sausage. Collie locked the door to her home before she left. She did not give anyone permission to enter her home while she was gone. Collie returned to her home between 4:30 and 5:00 p.m. that day. She noticed that her bedroom door was open, and that the drawers of her jewelry armoire were lying on her bed, empty. Collie discovered that jewelry was missing from the armoire and a bedside table, and that her 42-inch Samsung flat screen television also was missing. Collie later determined that checks for her checking account were missing as well.

Collie reported the burglary to the Jackson County Sheriff's Office and described the missing items. Deputies later notified Collie that they recovered some of her property. Deputies showed Collie photographs of jewelry and a television,

---

[2] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. (Doc. 37, Attach. 1-2, App. B, C (trial transcript)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979). Because Sherman challenges the sufficiency of the evidence on his burglary conviction, the court recounts the State's evidence in detail.

and Collie identified the items as hers. The photographs of the items were admitted into evidence at trial.

Deputy Johnny Rister responded to Collie's report of the burglary. Rister walked around the perimeter of Collie's home and observed that the glass sliding door at the rear of her home was forced inward. Rister photographed the damaged door.

Marcus Cook resided in Greenwood, Florida when Collie's home was burglarized. Cook and Petitioner Sherman were friends, having known each other for two years. Cook identified Sherman in the courtroom. On November 27, 2010, Sherman came to Cook's home between 2:00 and 3:00 p.m. and asked Cook if he wanted to buy a television. Cook asked Sherman what kind of television, and Sherman responded that it was a flat screen. Cook told Sherman he had only $100.00. Sherman went outside, got the television, brought it inside Cook's home, and set it down. Cook repeated that he had only $100.00, and gave Sherman the money. Sherman took the money and left.

Later that day, Sherman returned to Cook's home and came inside with a tall, heavy-set white male. The heavy-set white male was wearing pants torn from the seat down the back of the leg. Cook left with Sherman and the white male to drive around while Cook contacted friends for money. The white male drove. At one point,

Sherman and the white male stopped at Sharon Coleman's house and went inside. Cook stayed in the truck. Ms. Coleman knew Sherman, and recalled the white male's name as "John." The three smoked crack cocaine, and then Sherman and John left.

Cook was unsuccessful in finding a source for money, so Sherman and John took him back home. An hour or two later, Sherman and John returned to Cook's home and inquired if Cook had any money yet. Cook told them no, and Sherman commented to John: "Well, we might need to go get your TV." Sherman and John departed, leaving the television with Cook.

Charles Tatum resided approximately a mile and a half outside of Greenwood. On Saturday, November 27, 2010, between 3:00 and 4:00 p.m., a black man and a heavy-set white male knocked on his door. The black man was holding a paper bag and told Tatum he wanted to sell him something. Tatum asked the white man, "What you [sic] doing up here?" The man answered, "I was driving him," and pointed to the black man. The black man started pouring the contents of the bag onto the floor of the porch, and it appeared to be costume jewelry. Tatum told them to leave or he would shoot them. As the men walked back to their pick-up truck, Tatum saw that the white man's pants were torn from the back pocket down his leg.

Sherman returned to Cook's home, again, between 6:00 and 8:00 p.m. on November 27, 2010. This time, Sherman arrived with Cook's cousin, Richard

Edwards. Sherman hounded Cook for more money, and Cook told Sherman he would try to get money by Monday.

Richard Edwards was Marcus Cook's second cousin. Edwards lived in Marianna, Florida. Edwards knew Sherman through Marcus Cook. On Saturday, November 27, 2010, at approximately 6:00 p.m., Sherman called Edwards and told him he wanted to drop off some money he owed Edwards. Sherman arrived at Edwards's home in a pick-up truck and gave Edwards $5.00. The person driving the pick-up truck drove off, and Sherman asked Edwards if Edwards would give him a ride. Edwards drove Sherman to various places over a three-hour period. The two men consumed alcohol and smoked crack cocaine, and Sherman stopped several places to borrow money. Eventually, Edwards needed gas for his car, and Sherman believed he could get money from Cook, so Edwards drove Sherman to Marcus Cook's home. Cook had no money, so the men left. Edwards dropped off Sherman at Sherman's home at approximately 10:00 p.m.

Deborah Sherman was Petitioner Sherman's wife of six years. She testified that on November 27, 2010, a large white male named John came to their home between 10:00 and 11:00 a.m. Petitioner Sherman left the house with John and returned at approximately 9:00 p.m.

On Sunday, November 28, 2010, at 8:35 a.m., Joey Rabon, a captain with the Jackson County Sheriff's Office, received a tip that Collie's stolen television might be at Marcus Cook's home. Rabon and two investigators went to Cook's home and inquired about the television. Initially, Cook did not tell them the version of events to which he testified at trial, but when the deputies told him the television might be stolen, Cook gave them the television. The television was Ms. Collie's stolen television. Cook told Captain Rabon that Sherman sold him the television.

Also on Sunday, November 28, Investigator Scott Edwards recovered jewelry from John Lincoln's home. The jewelry was in a plastic grocery bag. Collie identified some of the jewelry as hers.

Rachel Smith, a crime laboratory analyst in the Latent Print Section of the Florida Department of Law Enforcement, recovered fingerprints from the television retrieved from Marcus Cook's home. Smith compared the fingerprints with Sherman's known fingerprints and with John Lincoln's known fingerprints. Thirteen fingerprints on the television were Sherman's, and two fingerprints on the television's stand were Sherman's. None of the fingerprints recovered from the television or its stand were John Lincoln's fingerprints.

In Jackson County Circuit Court Case No. 2010-CF-0718, Sherman was charged, as a first-degree principal, with burglary of a dwelling (Count I) and dealing

in stolen property (the television) (Count II). (Doc. 37, Attach 1, App. A at 2).[3] John

Lincoln also was charged with the crimes. (Doc. 37, Attach. 1, App. B, Trial Tr. at

83). Sherman was tried by a jury and found guilty as charged. (Doc. 37, Attachs. 1-

2, App. B, C (trial transcript); Attach. 1, App. A, at 47 (verdict)). The trial court

adjudicated Sherman guilty and sentenced him to consecutive terms of 15 years in

prison on each count, for a total term of 30 years of imprisonment. (Doc. 22, Attach.

1, App. A at 51-63, 67-72). The Florida First District Court of Appeal ("First DCA"),

affirmed on September 24, 2012, *per curiam* and without written opinion. *Sherman

v. State*, 97 So. 3d 222 (Fla. 1st DCA 2012) (Table) (copy at Doc. 37, Attach. 2,

App. G).

On December 17, 2012, Sherman filed a *pro se* motion for postconviction

relief under Florida Rule of Criminal Procedure 3.850, raising four claims. (Doc. 37,

Attach. 3, App. H at 1-25). Sherman subsequently amended the motion with an

additional claim. (Doc. 37, Attach. 3, App. H at 26-32). By order entered November

14, 2013, the state circuit court denied three claims, set an evidentiary hearing to

---

[3] Citations to the state court record are to the electronically-filed exhibits attached to
the State's answer. (Doc. 37). The citation refers to the electronic attachment number
followed by the appendix letter. If a page of an appendix bears more than one page
number, the court cites the "Bates stamp" number appearing at the bottom center of
the page.

resolve one claim, and reserved ruling on the remaining claim of cumulative error. (Doc. 37, Attach. 3-4, App. I at 206-345). After conducting a limited evidentiary hearing where Sherman was represented by counsel, the circuit court entered a final order denying relief on all claims. (Doc. 37, Attach. 4, App. I at 376-401 (evidentiary hearing transcript); Doc. 37, Attach. 4, App. J at 408-523 (final order)). Sherman appealed. (Doc. 37, Attach. 5, App. L). The First DCA affirmed *per curiam* without written opinion. *Sherman v. State*, 203 So. 3d 162 (Fla. 1st DCA 2016) (Table) (copy at Doc. 37, Attach. 6, App. O). The mandate issued November 23, 2016. (Doc. 37, Attach. 6, App. Q).

Sherman filed his original federal habeas petition on July 26, 2017. (Doc. 1). Sherman's third amended petition, which raises three claims, is the operative pleading. (Doc. 34). The State asserts that Sherman is not entitled to habeas relief because one sub-claim is procedurally defaulted (Doc. 43), and the remaining claims are without merit. (Doc. 37).

## II.    Relevant Legal Principles

### A.    Exhaustion and Procedural Default

Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct'

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claims to the state court, *Picard*, 404 U.S. at 275, "such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation." *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270 (11th Cir. 2015) (quoting *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004)). A claim that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40, 848 (1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

"To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). This standard is very difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

513 U.S. at 327.

### B. Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United

States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[4] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the

---

[4] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application"

clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not

a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III.   Discussion

### Ground One          "Trial court erred in denying judgment of acquittal." (Doc. 34 at 8 in ECF).

Sherman challenges his burglary conviction on the ground that there was no evidence he was at the scene of the burglary, much less that he entered Collie's home with the intent to commit a crime. (Doc. 34 at 8, 20-21 in ECF). Sherman admits that his fingerprints were on Collie's television, but explains he merely picked it up out of John Lincoln's truck to assist Lincoln in selling it. (*Id*. at 8). Sherman alleges that he did not know the television was stolen. (*Id*.). Sherman contends that the trial

court's denial of his motion for judgment of acquittal on the burglary charge violated his federal due process rights. (*Id.*).

The parties agree that Sherman exhausted this claim by presenting it to the state courts at trial and on direct appeal. (Doc. 1 at 8-9; Doc. 37 at 16-21). The State asserts that Sherman is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard.

### A.    Clearly Established Federal Law

The Due Process Clause of the Fourteenth Amendment requires the State to prove each element of the offense charged beyond a reasonable doubt. *See Jackson*, 443 U.S. at 315. "Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 324, n.16).

The federal standard finds evidence sufficient to support a conviction "if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson*, 566 U.S. at 654 (quoting *Jackson*, 443 U.S. at 319) (emphasis in original). By confining the court's review to that legal question,

*Jackson*'s limited, deferential standard ensures that the court "does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Musacchio v. United States*, 577 U.S. ___, 136 S. Ct. 709, 715 (2016) (quoting *Jackson*, 443 U.S. at 319); *see also Johnson*, 566 U.S. at 655 (explaining that *Jackson*'s deferential standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring that jurors 'draw reasonable inferences from basic facts to ultimate facts.'") (quoting *Jackson*, 443 U.S. at 319).

## B.    Section 2254 Review of State Court's Decision

The First DCA's summary decision is an "adjudication on the merits" of Sherman's claim and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Because the First DCA rejected Sherman's claim without explanation, this court looks through the unexplained decision to the state trial court's rationale for

denying Sherman a judgment of acquittal. *See Wilson v. Sellers*, 584 U.S. ___, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

At the close of the State's case, the defense moved for a judgment of acquittal:

> MR. WINN [Defense Counsel]:  Yes, your Honor, at this time, we move for a judgment of acquittal on counts one and two. On count one, burglary of a dwelling, that Mr. Basford [Prosecutor] has not presented any evidence what-so-ever that Mr. Sherman entered, knowingly or remained in the structure of the dwelling of Dorothy Collie with the intent to commit the offense of theft therein, or did aid and abet the same.
>
> In count two, that Mr. Basford has not proved a prima facie case to establish that Mr. Sherman endeavored, trafficked, or endeavored to traffic in the television of Mr. [sic] Collie, which Mr. Sherman knew or should have known was stolen, or did aid and abet the same. We move for judgment of acquittal on both counts one and two, your Honor.
>
> THE COURT:  I was wondering about it myself until that last witness, but I think that connected up Mr. Sherman to the stolen property, and looking at the evidence in the light most favorable to the state, that, therefore, gives an inference, I believe, as to both charges, and so the state has met it's [sic] burden as to both charges of burglary and the dealing in stolen property.

(Doc. 37, Attach. 2, App. C at 21). The last witness was Rachel Smith, the fingerprint expert. (Doc. 37, Attach. 2, App. C at 10-20). On direct appeal, Sherman argued that

the evidence was insufficient to prove that he participated in burglarizing Collie's home. (Doc. 37, Attach. 2, App. D).

In Florida, the crime of burglary of a dwelling has two elements: (1) the defendant entered the victim's dwelling; and (2) at the time the defendant entered the dwelling, he intended to commit an offense therein (here, theft). *See* Fla. Stat. § 810.02(1)(b)(1) and (3); *see also* Doc. 37, Attach. 2, App. C at 59 (jury instructions).

With respect to the intent element, the court instructed the jury:

> You may infer that King Edward Sherman, Jr., had the intent to commit a crime inside a dwelling if the entering of the dwelling was done stealthfully [sic] and without the consent of the owner or occupant.

> The intent with which an act is done is an operation of the mind and, therefore, is not always capable of direct and positive proof. It may established [sic] by circumstantial evidence like any other fact in a case.

> Even when an unlawful entering a dwelling is proved, if the evidence does not establish that it was done with the intent to commit the offense of theft, the defendant must be found not guilty of burglary.

> Proof of possession by an accused of property recently stolen by means of a burglary, unless satisfactorily explained, may justify a conviction of burglary if the circumstances of the burglary and of the possession of the stolen property convince you beyond a reasonable doubt that the defendant committed the burglary.

> . . . .

> Theft means knowingly and unlawfully obtaining or endeavoring to obtain the property of another with the intent to either temporarily or

Page 18 of 44

permanently deprive the victim of his or her right to the property. It includes conduct previously know [sic] as stealing, larceny, or other similar conduct.

(Doc. 37, Attach. 2, App. C at 59-60).

The trial court also instructed the jury on Florida's principal theory of liability:

If the defendant helped another person or persons commit a crime, the defendant is a principal and must be treated as if he had done all the things the other person or persons did, if the defendant had a consciouses [sic] intent that the criminal act be done, and the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist, or advise the other person or persons to actually commit the crime.

(Doc. 37, Attach. 2, App. C at 62; *see also* Fla. Stat. § 777.011).

Based on the State's evidence, as described in the Background section above, a fairminded jurist could agree with the First DCA's conclusion that, viewing the evidence in the light most favorable to the State, a rational trier of fact could conclude beyond a reasonable doubt that Sherman either actually entered Collie's home with the intent to commit a theft, or aided or abetted John Lincoln in doing so. *See Davis v. Ayala*, 576 U.S. ___, 135 S. Ct. 2187, 2199 (2015) (confirming that "a state-court decision is not unreasonable if fairminded jurists could disagree on its correctness"; and that a habeas petitioner "must show that the state court's decision to reject his claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement.") (internal quotation marks and citations omitted); *Jackson*, 443 U.S. at 319.

The state court's rejection of Sherman's insufficient evidence claim was neither contrary to, nor an unreasonable application of, the *Jackson* standard. Sherman is not entitled to habeas relief on Ground One.

**Ground Two**         **"Trial court erred on jury instructions § 812.022(3) an improper comment on the evidence and thereby invade [sic] the province of the jury. Violation of Fla. Stat. § 90.106." (Doc. 34 at 10 in ECF).**

Sherman claims that the trial court violated his right to due process and a fair trial by instructing the jury, under Fla. Stat. § 812.022, that proof of certain facts, unless satisfactorily explained, gives rise to an inference of guilt. (Doc. 34 at 10, 21). Specifically, Sherman challenges this portion of the burglary instructions:

> Proof of possession by an accused of property recently stolen by means of a burglary, unless satisfactorily explained, may justify a conviction of burglary if the circumstances of the burglary and of the possession of the stolen property convince you beyond a reasonable doubt that the defendant committed the burglary.

(Doc. 37, Attach. 2, App. C at 59-60). In addition, Sherman challenges this portion of the dealing in stolen property instructions:

> Proof of the purchase or sale of stolen property at a price substantially below the fair market value, unless satisfactorily explained, gives rise to an inference that the person buying or selling

the property knew or should have known that the property had been stolen.

(Doc. 37, Attach. 2, App. C at 61-62; *see also* Fla. Stat. § 812.022(3)).

Sherman takes issue with the burglary instruction on the ground that "a reasonable juror could have understood [the instruction] as creating a mandatory presumption that shifted to the Petitioner the burden of persuasion on the crucial element of Intent," in violation of *Sandstrom v. Montana*, 442 U.S. 510 (1979), and *Francis v. Franklin*, 471 U.S. 307 (1985). (Doc. 34 at 21). Sherman takes issue with the dealing in stolen property instruction on the ground that there was no evidence of the fair market value of the stolen property; therefore, the trial judge's giving the instruction was an improper comment on the evidence and invaded the province of the jury. (Doc. 34 at 10, 21-22; Doc. 45). Sherman claims that he presented both of these sub-claims in his direct appeal, and that he also challenged trial counsel's failure to object to the instructions in his Rule 3.850 motion. (Doc. 34 at 10; Doc. 45 at 1-2 and App. A & B).

The State asserts that Sherman's first sub-claim is exhausted, but fails on the merits. (Doc. 37 at 22-26). The State asserts that Sherman's second sub-claim is procedurally defaulted, because he did not present it to the state courts and is now

procedurally barred from doing so. (Doc. 43). The court addresses each sub-claim in turn.

<b>Sub-Claim One    The Burglary Instruction Created a Mandatory Presumption That Improperly Shifted The Burden of Proof To Sherman</b>

The parties agree that Sherman presented this issue to the First DCA in his direct appeal. (Doc. 34 at 10; Doc. 37 at 22). The State asserts that Sherman is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 37 at 23-26).

<b>A</b>.    <b>The Due Process Standard</b>

The Due Process Clause "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Francis*, 471 U.S. at 313; *see In re Winship*, 397 U.S. 358, 364 (1970) (holding that due process requires proof beyond a reasonable doubt of every fact necessary to constitute the crime charged). A "conclusive presumption on [an] issue . . . is the functional equivalent of a directed verdict on that issue." *Connecticut v. Johnson*, 460 U.S. 73, 84 (1983).

In *Sandstrom*, the defendant was charged with deliberate homicide. The trial court instructed the jury that "the law presumes that a person intends the ordinary

Page 22 of 44

consequences of his voluntary acts." 442 U.S. at 512. At trial, Sandstrom admitted that he killed the victim, but argued that he did not do so "purposely or knowingly" and, consequently, was not guilty of deliberate homicide but of a lesser offense. *Id*. The jury found Sandstrom guilty of deliberate homicide. *Id*. at 513. The Supreme Court of the United States determined that Sandstrom's jurors "were not told that they had a choice . . .; they were told only that the law presumed" Sandstrom "purposely or knowingly" committed deliberate homicide. *Id*. at 515. The Court held that the jury instruction was unconstitutional because it relieved the state of its burden of proving every element of the crime beyond a reasonable doubt. *Id*. at 520.

In *Francis*, the defendant was charged with malice murder, of which an essential element was "intent to kill." 471 U.S. at 316 n.4. The Supreme Court held that a jury instruction providing that "[t]he acts of a person of sound mind and discretion are presumed to be the product of the person's will," and that "[a] person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts" created a mandatory presumption that violated the defendant's due process rights, even though the trial court also instructed the jury that "the presumption may be rebutted." *Id*. at 315-18.

In *Carella v. California*, 491 U.S. 263, 265-66 (1989), the Supreme Court found constitutional error where a jury instruction provided that the defendant "shall

be presumed to have embezzled." The Court explained that the instruction "directly foreclosed independent jury consideration of whether the facts proved established certain elements of the offenses," and that the instruction also relieved the state of its burden to prove by evidence every essential element of the crime beyond a reasonable doubt. *Id*.

In contrast to a *mandatory* presumption—which "instructs the jury that it must infer the presumed fact if the State proves certain predicate facts"—a *permissive* inference "suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." *Francis*, 471 U.S. at 314. A permissive inference does not violate the Due Process Clause as long as the suggested conclusion "is . . . one that reason and common sense justify in light of the proven facts before the jury." *Id*. at 314-15. In this way, the state retains the burden "of persuading the jury that the suggested conclusion should be inferred based on the predicate facts proved." *Estelle v. McGuire*, 502 U.S. 62, 78-79 (1991).

In *Barnes v. United States*, 412 U.S. 837 (1973), the district court instructed the jury:

> Possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find, in the light of the surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.

*Id*. at 839-840. The Supreme Court held that this instruction comports with due process. *Id.* at 846.

In *County Court of Ulster Cty., N.Y. v. Allen*, 442 U.S. 140 (1979), the defendants were charged with illegally possessing firearms found in an automobile. *Id*. at 145. The trial court instructed the jurors that they "were entitled to infer possession from the defendants' presence in the car." *Id*. at 145, 157-65. The Supreme Court determined that the jury instructions, as a whole, made it clear "that the [permissive] presumption was merely a part of the prosecution's case," and that the State retained the burden of proving possession beyond a reasonable doubt "without regard to how much evidence the defendants introduced." *Id*. at 160-62. Further, under the facts of the case, it was rational for the jury to make the connection permitted by the inference. *Id*. at 163-67.

In determining whether an impermissible evidentiary presumption arose following a particular instruction, the court first considers the specific language challenged. *Francis*, 471 U.S. at 315; *see also Sandstrom*, 442 U.S. at 514. If there is "a reasonable likelihood" that the jury understood "a specific portion of the jury charge, considered in isolation . . . as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole" in order to

determine if other instructions "explain the particular infirm language." *Boyde v. California*, 494 U.S. 370, 378-80 (1990); *Francis*, 471 U.S. at 315; *Sandstrom*, 442 U.S. at 514.

> ### B.    The Jury Instruction On Burglary Did Not Violate Sherman's Right To Due Process

Sherman claims that "[t]he Jury instruction in burglary . . . creat[ed] a mandatory presumption that shifted to the Petitioner the burden of persuasion on the crucial element of Intent." (Doc. 34 at 21). Sherman is referencing this instruction:

> Proof of possession by an accused of property recently stolen by means of a burglary, unless satisfactorily explained, may justify a conviction of burglary if the circumstances of the burglary and of the possession of the stolen property convince you beyond a reasonable doubt that the defendant committed the burglary.

(Doc. 37, Attach. 2, App. C at 59-60). This standard jury instruction derives from section 812.022(2), Florida Statutes (2002). *See Walker v. State*, 896 So. 2d 712, 714 (Fla. 2005).

Viewing the specific language of the instruction, there is no reasonable likelihood that the jury understood it as requiring them to conclude from Sherman's possession of recently stolen property that he committed the burglary. The instruction is phrased in permissive terms; it merely suggests to the jury a possible conclusion it may draw from proof of the predicate facts; and it allows the jury to

draw the inference only if the State's proof "convince[s] [them] beyond a reasonable doubt that the defendant committed the burglary." The instruction is the functional equivalent of the permissive inference in *Barnes*, 412 U.S. 845-46, that the Supreme Court of the United States approved.

Additionally, the Florida Supreme Court has examined the instruction at issue, concluded that it is permissive as opposed to mandatory in nature, and held that it does not violate due process. *See Walker*, 896 So. 2d at 715-16. In *Walker*, a defendant convicted of burglary of a dwelling argued that the instruction constituted an impermissible comment on the evidence and created a presumption of law that deprived him of due process. *Id*. at 714. The Florida Supreme Court rejected that claim for several reasons, including that the instruction mirrored those that the United States Supreme Court approved in *Barnes* and *Allen*. *See Walker*, 896 So. 2d at 715-16.

The court in *Walker* also discussed Florida's long-standing precedent, *State v. Young*, 217 So. 2d 567 (Fla. 1968), which confirmed the permissive nature of the inference, its justification, and its effect. The court in *Young* explained:

> The appellate court is obviously under a misapprehension as to the rule of evidence respecting unexplained possession of recently stolen goods. The rule does not create a presumption of law, under which the burden is shifted to the accused to produce evidence to rebut the legal presumption of the existence of the operative facts. It is simply

a rule relating to circumstantial evidence from which the jury has the right to infer guilt of larceny or of breaking and entering with intent to steal.

Moreover, the inference of guilt that the jury may infer from the unexplained possession of recently stolen goods does not arise from the possessor's failure to explain or demonstrate by evidence of exculpatory facts and circumstances that his possession of the recently stolen goods is innocent. It is the fact of possession that provides the basis for the inference of guilt.

There is, however, no mandatory duty to explain possession of the goods. The accused may explain his possession at the appropriate time, but he is not required to do so. Even if he does come forward with an explanation, the jury is not required to believe it.

. . . .

Some circumstantial evidence—e.g., flight or concealment—is not sufficient, standing alone, to warrant the jury in returning a verdict of guilty. In the case of possession of recently stolen goods, however, the inference that the possessor is the guilty taker is so strong that the rules of evidence permit the jury to return a verdict of guilty on this one circumstance alone if the defendant allows it to go to the jury either unexplained or with an explanation that is so palpably unreasonable and incredible that the jury rejects it entirely.

*Id*. at 570-71 (citations omitted).

Sherman's burglary instruction did not create a mandatory presumption and did not impermissibly shift the burden of proof to him. Under the facts of this case, it was rational for the jury to connect Sherman's possession of Ms. Collie's recently-stolen property to the burglary, and to conclude that Sherman actually committed,

or helped John Lincoln commit, the burglary of Collie's home. Because Sherman's

claim fails under *de novo* review, it also fails under AEDPA's deferential standard.[5]

> **Sub-Claim Two**  **The Dealing In Stolen Property Instruction Was An Improper Comment On The Evidence Because There Was No Evidence Of The Fair Market Value Of The Stolen Property**

Sherman's remaining challenge to the jury instructions pertains to the

following instruction on dealing in stolen property:

> Proof of the purchase or sale of stolen property at a price substantially below the fair market value, unless satisfactorily explained, gives rise to an inference that the person buying or selling the property knew or should have known that the property had been stolen.

(Doc. 37, Attach. 2, Ex. C at 59-60; *see also* Fla. Stat. § 812.022(3)). Sherman asserts

that the trial court erred in giving this instruction because there was no evidence of

the fair market value of the stolen television or jewelry. Sherman contends that by

---

[5] The undersigned conducted a *de novo* review of Sherman's challenge to the burglary instruction, because although the State concedes exhaustion and the parties assert that this claim was raised in Sherman's direct appeal, Sherman's pleadings on direct appeal never argued that the instruction was a mandatory, burden-shifting presumption. *See* Discussion, *infra*, Sub-Claim Two. This court may deny relief on the merits on *de novo* review, regardless of any exhaustion concern. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review."); *see also* 28 U.S.C. § 2254(a), (b)(2).

including this instruction, the trial judge improperly commented on the evidence and invaded the province of the jury. (Doc. 34 at 10, 21). Sherman also argues that the words "substantially below the fair market value," are insufficiently defined to adequately inform a jury as to the appropriate circumstances in which to apply the inference, especially when the proof of fair market value is deficient. (*Id*. at 21). Sherman asserts that he was prejudiced by the instruction because it destroyed the impartiality of the jury. (*Id*. at 21-22).

The State asserts that Sherman never presented this claim to the state courts, and that the claim is now procedurally defaulted. (Doc. 43). The State is correct.

Sherman's direct appeal brief challenged the jury instructions on this bases: "Instructing The Jurors That They Could Infer Guilt From Possession Of Recently Stolen Property, Without Also Informing Them That Possession Had To Be Exclusive, Created Fundamental Error." (Doc. 37, Attach. 2, App. D at i). Sherman summarized his argument as follows:

> [O]n the facts of this case, it was fundamental error to instruct the jury that possession of recently stolen property could justify a burglary conviction, as well as a conviction for trafficking in stolen property, without also informing them that the possession had to be exclusive. In the absence of any direct proof that Mr. Sherman acted in concert with Mr. Lincoln or any other person to burglarize Ms. Collie's house, the only way the State could obtain a conviction for burglary was through an inference drawn from his "possession" of Ms. Collie's television after the burglary. However, because of the total failure of proof that

Mr. Sherman was involved in the burglary or intended for it to happen, it was fundamental error to give the instruction allowing that inference. At a minimum, the jury should have been instructed that the inference was not available without evidence of exclusive possession, including joint possession by persons acting in concert.

Similarly, even though there was some direct evidence that Mr. Sherman participated in selling the television after the burglary, the jury should have been instructed that inferring knowledge that the television was stolen first required finding exclusive possession of the television, either by Mr. Sherman alone or by Mr. Sherman and others acting in concert.

(Doc. 37, Attach. 2, Ex. D at 8-9). Sherman's issue with the instructions was that

they "omitted the requirement of exclusive possession." (*Id*. at 17). That is not the

same issue Sherman now presents—that there was no evidence of the fair market

value of the stolen property.

Sherman's habeas reply (Doc. 45), points to this excerpt from his direct appeal

brief, and argues that because it includes the words "market value," it is the same

claim he now raises:

Moreover, in the absence of proof of exclusive control, it was error to instruct the jury to infer knowledge that the television was stolen from the fact that Mr. Sherman handled the television shortly after the burglary. Even though there was some direct evidence that Mr. Sherman participated in selling the television to Mr. Cook, the jury could not have reached its verdict on the count of trafficking in stolen property without finding that Mr. Sherman knew the television was stolen. In the absence of some additional proof, such as concealment, and without any proof of the market value of the television, the only support for finding Mr. Sherman knew the television was stolen was an

> inference drawn from his possession of the television during the
> transaction with Mr. Cook. The jury should have been instructed on the
> law requiring exclusive and personal possession before being allowed
> to draw an inference regarding Mr. Sherman's knowledge.

(Doc. 37, Attach. 2, Ex. D at 21). The overarching point of the above paragraph is

summarized in its first and last sentences—the requirement, but lack of proof of,

exclusive possession or control.

The difference between the two claims is apparent not only from the theme of

each claim, but also from the legal authority on which each relies. Sherman's direct

appeal argument relied on state-law cases focused on the lack of evidence of the

defendant's exclusive possession of the stolen property. (Doc. 37, Attach. 2, Ex. D

at 18-21). For example, Sherman discussed *Nshaka v. State*, 92 So. 3d 843, 847 (Fla.

4th DCA 2012), and the cases cited therein, for "the underlying principle that the

inference that a defendant committed a burglary based on possession of recently

stolen goods is not proper when the circumstances do not exclude the possibility that

others had dominion and control over the stolen goods." (Doc. 37, Attach. 2, Ex. D

at 19). Sherman also cited *Chamberland v. State*, 429 So. 2d 842, 843 (Fla. 4th DCA

1983) (reversing a conviction for possession of stolen property where the possession

was not exclusive to the defendant), and *Walton v. State*, 404 So. 2d 776, 777 (Fla.

1st DCA 1981) (reversing a conviction for grand and petty theft because the evidence

did not show "personal or exclusive possession"). (*See* Doc. 37, Attach. 2, Ex. D at 20).

Sherman's habeas claim here relies on a completely different line of caselaw —cases that focus on the lack of evidence of the fair market value of the stolen property. (Doc. 34 at 22). Sherman relies on *Barfield v. State*, 613 So.2d 507, 507 (Fla. 1st DCA 1993), and three cases applying *Barfield*, namely: *Jeudy v. State*, 209 So.3d 37, 39 (Fla. 4th DCA 2016), *Hadley v. State*, 152 So. 3d 848, 849 (Fla. 1st DCA 2014), and *Dawson v. State*, 66 So. 3d 1077, 1077-78 (Fla. 1st DCA 2011). In *Barfield*, the court held that the trial court should not have instructed the jury on the inference arising from selling property below fair market value because there was no evidence of the fair market value of the property. *Id*. at 508. Neither *Barfield*, nor the other cases Sherman cites, addressed whether there was sufficient evidence of possession.

In sum, Sherman's direct appeal brief did not fairly present the issue he now raises concerning the propriety of the fair market value instruction. Sherman does not satisfy the exhaustion requirement merely by presenting the state court with all the facts necessary to support his claim, or by presenting a somewhat similar claim. *Kelley*, 377 F.3d at 1343-44 ("It is not sufficient merely that the federal habeas petitioner has been through the state courts, nor is it sufficient that all the facts

necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made."). "The petitioner must present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim.'" *Id*. at 1344 (quoting *Picard*, 404 U.S. at 277).

To the extent Sherman suggests that he exhausted his claim by raising it as an ineffective assistance of trial counsel claim in his Rule 3.850 motion, his argument is without merit. Sherman's substantive challenge to the jury instructions is not the same as an ineffective assistance of trial counsel claim based on counsel's failure to object to the instructions. The two are separate and distinct for purposes of satisfying the AEDPA's exhaustion requirement. *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) (distinguishing an ineffective assistance claim based on counsel's failure to object to a jury instruction from a substantive due process claim challenging the trial court's giving of that instruction); *Pietri v. Fla. Dep't of Corr.*, 641 F.3d 1276, 1289 (11th Cir. 2011) (holding that federal habeas petitioner's substantive judicial bias claim was not the same claim as his ineffective assistance of appellate counsel claim based on counsel's failure to raise the substantive claim; the two claims were "separate and distinct" for purposes of the federal habeas exhaustion requirement); *Lefroy v. Sec'y for Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 n.24 (11th Cir. 2005)

(noting that a substantive claim is "separate and distinct" from an ineffective assistance claim based on the substantive claim).

Sherman makes none of the requisite showings to excuse his procedural default. Sherman's procedural default bars federal habeas review of his challenge to the jury instruction arising from the lack of evidence of the property's fair market value. Sherman is not entitled to habeas relief on Ground Two.

**Ground Three**    **"Trial counsel was ineffective for failing to investigate, depose, and call alleged co-defendant as a witness." (Doc. 34 at 12 in ECF).**

Sherman claims his trial counsel was ineffective for failing to investigate, depose, and call co-defendant John Lincoln as a defense witness. Sherman alleges that Lincoln stated at a first appearance on November 29, 2010, that Sherman did not participate in the burglary and only helped sell the television. (Doc. 34 at 12 in ECF). Sherman also alleges that according to a police report, Lincoln confessed to several deputies that he committed 10-12 burglaries. (*Id.* at 12). Sherman claims that defense counsel knew of Lincoln's statements before trial, yet failed to present this exculpatory evidence. (*Id.* at 23-28).

The parties agree that Sherman presented this claim to the state courts as Ground Five of amended Rule 3.850 motion; that the state circuit court denied the claim on the merits in a reasoned order; and that the First DCA summarily affirmed

without explanation. (Doc. 34 at 12-15 in ECF; Doc. 37 at 27). The State asserts that Sherman is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 37 at 27-30).

### A.    Clearly Established Federal Law

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## B.    Section 2254 Review of State Court's Decision

Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the state circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192. The state circuit court held an evidentiary hearing on this claim, where Sherman was represented by counsel. Sherman and his former trial counsel, Attorney Jason Winn, testified at the hearing. (Doc. 37, Attach. 4, App. I at 376-401 (evidentiary hearing transcript)).

After the hearing, the circuit court entered a final order denying postconviction relief. (Doc. 37, Attach. 4, App. J at 408-523). The order correctly identified *Strickland* as the controlling legal standard, (Doc. 37, Attach. 4, App. J at 409), and rejected Sherman's claim for these reasons:

[The Defendant] alleges that Lincoln would have testified that the Defendant was not present when Lincoln committed the burglary and did not know the television was stolen, and alleges that Lincoln would have testified that he left his (Lincoln's) house at 12:30 p.m.

As part of the requirement to show that counsel's ineffectiveness prejudiced the defendant's case, a facially sufficient post conviction [sic] motion alleging the ineffectiveness of counsel for failing to call certain witnesses must set forth (1) the identity of the prospective witness; (2) the substance of the witness's testimony; (3) an explanation as to how the omission of the testimony prejudiced the outcome of the case; (4) a statement that the witnesses would in fact have been available to testify at trial. *See Nelson v. State*, 875 So. 2d 579 (Fla. 2004). The Defendant's motion was facially sufficient and an evidentiary hearing was properly granted. However, he did not meet his burden to prove his allegations at the hearing. The Defendant did not call . . . the alleged exculpatory witness[ ], John Wayne Lincoln . . . to testify at the evidentiary hearing to establish what, if any, testimony [he] could have provided at trial. There is no evidence of what [he] saw or knew other than the Defendant's own self-serving statements, and the Defendant admitted in his testimony that he had been convicted of at least four prior felonies and at least one crime of dishonesty. The court is not required to accept a defendant's testimony at a post conviction [sic] hearing, even if uncontroverted, if the court does not believe the defendant. *See Cassidy v. State*, 18 So. 3d 620 (Fla. 5th DCA 2009). Nor is there any evidence that [this] witness[ ] would have been available to testify at the trial. . . .

Even taking the Defendant's allegations as true, however, the Defendant cannot demonstrate deficient performance by counsel, as Mr. Winn's testimony at the evidentiary hearing demonstrated that he made a strategic decision not to call [this] witness[ ], and the Defendant agreed with that decision. As to co-defendant Lincoln, the State introduced a portion of Lincoln's transcribed statement to police as State's exhibit 1. In it, Lincoln stated that the Defendant was with him and that they committed the burglary in this case. Mr. Winn testified that, given what Lincoln said in his sworn statement, there was no need

to call him as a witness because his testimony would have been detrimental to the Defendant.

(Doc. 37, Attach. 4, App. J at 410).

The circuit court's order relied on a number of factual findings. This court defers to those findings, because they are amply supported by the record and because Sherman has not rebutted them with clear and convincing evidence to the contrary. This deference extends to the state court's determination that Attorney Winn's testimony was credible, and Sherman's testimony was not credible. Eleventh Circuit precedent requires this deference. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). The "AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence." *Consalvo*, 664 F.3d at 845 (citing 28 U.S.C. § 2254(e)).

Based on the facts as found by the state court, fairminded jurists can concur in the state court's conclusion that Attorney Winn's decision not to call John Lincoln to testify was reasonable. Winn testified that during discovery, the State provided a transcript of John Lincoln's interview with an investigator from the Jackson County Sheriff's Office (Investigator Edwards). (Doc. 37, Attach. 4, App. I at 394). The transcript revealed that Lincoln told Investigator Edwards that Sherman was with him when he burglarized Ms. Collie's home on Bates Road and stole her television. (Doc. 37, Attach. 4, App. I at 394, 396). Winn testified that he made a strategic decision not to call Lincoln as a witness at Sherman's trial, because Lincoln's testimony would have been detrimental to Sherman's defense. (Doc. 37, Attach. 4, App. I at 396).

A partial transcript of John Lincoln's statement to Investigator Edwards was admitted into evidence at the postconviction evidentiary hearing as State's Exhibit 1. (Doc. 37, Attach. 5, App. K at 699, 700). According to the transcript, Lincoln told Investigator Edwards that Sherman wanted to "hit" a house, so they found a blue trailer on "Bates." (Doc. 37, Attach. 5, App. K at 700). Lincoln told Edwards: "[W]e went in, took the big screen TV, left." (Doc. 37, Attach. 5, App. K at 700). Sherman's postconviction counsel presented no evidence that John Lincoln would have testified

that Sherman was <u>not</u> with him when he burglarized Ms. Collie's home on Bates Road.

The state court's rejection of Sherman's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Sherman is not entitled to federal habeas relief on Ground Three.

## IV. Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude

the issues presented are adequate to deserve encouragement to proceed further.'"
*Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S.
at 327). "When the district court denies a habeas petition on procedural grounds
without reaching the prisoner's underlying constitutional claim, a COA should issue
when the prisoner shows, at least, that jurists of reason would find it debatable
whether the petition states a valid claim of the denial of a constitutional right *and*
that jurists of reason would find it debatable whether the district court was correct in
its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis
added). Here, Petitioner has not made the requisite demonstration. Accordingly, the
court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order,
the court may direct the parties to submit arguments on whether a certificate should
issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation
by either party, that party may bring such argument to the attention of the district
judge in the objections permitted to this report and recommendation.

## V.    Conclusion

For the reasons set forth above, the undersigned respectfully
**RECOMMENDS**:

1.    The third amended petition for writ of habeas corpus (Doc. 34), challenging the judgment of conviction and sentence in *State of Florida v. King Edward Sherman, Jr.*, Jackson County Circuit Court Case No. 2010-CF-718, be **DENIED**.

2.    The District Court **DENY** a certificate of appealability.

3.    The clerk of the court close this case.

At Panama City Beach, Florida, this <u>24th</u> day of January, 2020.

<u>/s/</u> *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**